IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ADAM HAWLEY,<br><br>    Plaintiff,<br><br><br>  vs.<br><br><br>UNION PACIFIC RAILROAD COMPANY,<br><br><br>    Defendant. | **NO. 8:22-CV-0270**<br><br><br>**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY** |

Plaintiff Adam Hawley has sued his former employer defendant Union Pacific Railroad Company for negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. Filing 1. Hawley filed a Motion for Partial Summary Judgment to establish Union Pacific's liability for negligence, asserting that a jury trial is necessary only on the issue of damages. Filing 23. Union Pacific filed a Motion for Summary Judgment that seeks to dismiss Hawley's FELA claim as a matter of law. Filing 37. Hawley also filed a motion to exclude the testimony of Union Pacific's expert, Dr. Jeff Broker, asserting that Dr. Broker was untimely disclosed and is otherwise unqualified. Filing 56. For the reasons stated below, all three Motions now before the Court are denied.

1

# I.  INTRODUCTION

## A.  Factual Background

Both Hawley and Union Pacific provided Statements of Facts and Responses to those Statements. Filing 25; Filing 40; Filing 52; Filing 53. The facts are drawn from these statements. Unless otherwise indicated, the facts set out here occurred on August 5, 2019, and are undisputed. The identification of the parties and the statement of the general timeline of events are largely undisputed in this case. Conversely, the causes of Hawley's injury are disputed. The Court will only discuss material facts "that might affect the outcome of the suit under the governing law." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (internal quotations and citations omitted).

### 1.  Hawley's Collision While Using Union Pacific's Knuckle Cart

Plaintiff Adam Hawley was employed as a carman[1] for Union Pacific and worked in North Platte, Nebraska. Filing 25 at 1 (¶¶ 1–2). On August 5, 2019, Hawley was working with another employee, Josh Vath, and his managers were director of maintenance Carl Spearman, general foreman Jerry Kincheloe, foreman Jeremy Hoffman, and manager Dustin Morris. Filing 25 at 1 (¶ 3).

Pursuant to his employment responsibilities, Hawley was required to move "knuckles," 80-pound pieces of metal equipment that comprise part of the coupling mechanisms between railcars, from inside a Union Pacific facility to outside worksites on a track. Filing 25 at 2 (¶ 4). Due to the weight of the knuckles, Union Pacific employees were not permitted to carry knuckles to the track.

---

[1] In his deposition testimony, Hawley stated that his job responsibilities as a carman were "to inspect and repair train cars. So that kind of covered all the basic maintenance; any -- anywhere from changing brake shoes to, you know, cutting apart a wreck and -- and fabricating replacement pieces." Filing 26-1 at 3.

Filing 25 at 2 (¶ 6). Union Pacific employees have different means of moving knuckles, including by forklift or by a "knuckle cart." Director Spearman described knuckle carts as follows:

> A knuckle cart is a cart that has a platform on it that we use. The knuckles weigh in the 70-pound range. They're heavy. So we provide a cart to put the knuckle on, about waist-high or so. . . . That allows us to transport [the knuckle] without carrying it, and so you put it on the cart and then you push it to the location where you need it.

Filing 25 at 2 (¶ 5).

On August 5, 2019, Hawley was required to move a knuckle from an indoor table to an outdoor worksite. Filing 25 at 3 (¶ 12). Hawley loaded a knuckle onto a knuckle cart and pushed it towards the outdoor worksite. Filing 25 at 6 (¶ 21). As Hawley was transporting the knuckle, the knuckle cart's axle caught onto another piece of equipment known as a "secondary support," which caused the knuckle cart to jerk up and to the right. Filing 25 at 6 (¶ 23). Hawley alleges that this collision caused a "serious shoulder injury." Filing 25 at 6 (¶ 25). Union Pacific disputes whether Hawley suffered a serious shoulder injury as a result of the collision. Filing 40 at 10 (¶ 25).

Union Pacific employee Director Spearman observed upon reviewing the post-incident photograph that the "wheels on the knuckle cart look like they are toed in" and he "would have liked to see [the defective knuckle cart] either be replaced or go for a repair." Filing 25 at 5 (¶ 17). General Foreman Kincheloe observed after reviewing the photograph that the "wheels are a little bent" and "it's common sense that the wheels would not come out of the manufacturer looking like that." Filing 25 at 5 (¶ 18). Kincheloe concluded that the knuckle cart should be "take[n] . . . out of service." Filing 25 at 5 (¶ 18). Foreman Hoffman determined that the "[a]xles are bent" and that the knuckle cart appeared "[u]nsafe." Filing 25 at 5 (¶ 19). Manager Morris observed that "[t]hose wheels look to . . . have a toed-in setting" and concluded that "[w]ith the wheels in that condition,"

the knuckle cart "should be pulled from service." Filing 25 at 5–6 (¶ 20). None of these Union Pacific employees testified that he had seen the cart in a defective condition before the collision.

### 2. *The Preexisting Condition of the Knuckle Cart*

There is a dispute among the parties as to whether the knuckle cart was defective before Hawley used it. Hawley argues that the knuckle cart had been defective "for years" as it "didn't track straight" and "had some left-to-right movement as [one] wheeled it." Filing 25 at 4 (¶ 14). Moreover, he argues that the knuckle cart's "defects" included "bent axles and bent wheels" and "were plain and obvious and known to employees." Filing 25 at 4 (¶ 16). These defects were present "for as long as Hawley could remember," and he contends that "'[a]nybody that worked in that area knew of the defective condition of the knuckle cart, and they would have known it by simply operating it." Filing 25 at 4 (¶ 16). Hawley also notes that Union Pacific "had no set calendar for regularly inspecting the knuckle carts in use." Filing 25 at 3 (¶ 11). Hawley's expert, Jason Engle, asserted that the knuckle cart "was clearly defective and should have been taken out of service well before Mr. Hawley went on duty the day of his incident. Any manager walking through the shop as well as any persons walking through the shop could have easily noticed the Knuckle Cart's bent axle and damaged wheels." Filing 52 at 8–9 (¶ 32).

Union Pacific disputes Hawley's contention that the knuckle cart was defective before Hawley collided with the secondary support. Union Pacific cites the testimony of witnesses besides Hawley that uniformly testified that they had no knowledge of a defective knuckle cart in the facility. Filing 40 at 15 (¶ 1) ("None of the witnesses deposed in this matter offered any testimony that established the defective condition of the knuckle cart before the date of the incident."). Hawley's partner on the night of the collision, Vath, testified that he had never dealt with a defective knuckle

4

cart. Filing 40 at 15 (¶ 1) (Q: Ever dealt with defective knuckle carts . . . other than flat tires? A: Not that I can recall."). Manager Morris testified the same. (Q: Have you ever encountered a defective knuckle cart? A: No."). General Foreman Kincheloe testified that he "was not aware of" any subpar knuckle cart. Filing 40 at 15 (¶ 1) (Q: "Was there one [knuckle cart] any worse than the others?" A: "Not that I was aware of, no."). Union Pacific also notes that, despite Hawley's claim that he knew about the defective condition of the knuckle cart "for years," he never reported any defects prior to the collision. Filing 40 at 16 (¶ 4). Accordingly, Union Pacific contends that it was not aware that there was a defective knuckle cart. Filing 40 at 16 (¶ 3).

    *3. The Cause of the Collision and Injury*

    In addition to the dispute over whether the knuckle cart was defective prior to Hawley's injury, the parties also disagree about the cause of the collision and of Hawley's injury. The parties agree that the collision occurred when Hawley hit a secondary support with the knuckle cart that he was pushing. Filing 40 at 15 (¶ 2). From there, the parties diverge on what caused the collision. Hawley contends that, despite having "to go around other pieces of equipment that were being used for repairs," he "made sure that the pathway he would be using [to transport the knuckle on the knuckle cart] would be free from obstructions." Filing 1 at 2 (¶ 8); Filing 52 at 6 (¶ 22). He asserts "the defective knuckle cart moved to the right and the end of the axle caught on the wheel of the secondary support, which jerked the cart up and to the right," injuring his shoulder. Filing 52 at 6 (¶ 23–24); *see also* Filing 1 at 2 (¶ 8) ("While pushing the knuckle cart, the cart veered due to the bent wheel rims striking another piece of equipment."). Hawley argues, "Due to the bent wheel rims, the cart wobbled and was hard to control," causing the collision. Filing 1 at 2 (¶ 8).

Union Pacific rejects Hawley's version of events. Union Pacific notes, and Hawley does not dispute, that Hawley responded to a question on an injury report form ("Did equipment/tools cause or contribute to the cause of the accident/injury?") with the answer: "You are unable to see the end of the axle while pushing the cart." Filing 40 at 16 (¶ 5). Union Pacific's expert, Dr. Jeff Broker, determined that Hawley's "version of how the knuckle cart behaved on the date of the alleged incident" is unsupported:

> Mr. Hawley's claim that he could not see the end of the right axle on the subject knuckle cart, due to the distortion of the right wheel/axle, is not supported by our inspection. The right axle protrudes significantly from the right wheel and is visible and easily seen if needed to manage clearances.

Filing 40 at 18 (¶ 14). Dr. Broker also disputed Hawley's contention that the cart "veered due to the bent wheel rims." Filing 1 at 2 (¶ 8). Dr. Broker explained:

> Further, despite the bent left axle and distorted right wheel, the cart tracked straight when pushed. It did not veer to the right or left when pushed. Mr. Hawley's testimony concerning how the cart's bent axle/wheel caused it to strike the stationary equipment is not supported.

Filing 40 at 18 (¶ 14). Finally, Dr. Broker disputed that Hawley could have injured his shoulder, even if the events described by Hawley occurred. Dr. Broker explained:

> The described knuckle cart incident was not consistent with causing Mr. Hawley to sustain a left shoulder injury. The physics of the cart's interaction with the secondary support unit, coupled with Mr. Hawley's connections with the cart, do not support violent loading of Mr. Hawley's left shoulder.

Filing 40 at 18 (¶ 14). In sum, Union Pacific's expert wholly rejects Hawley's narrative regarding the causes of the collision and his injury.

Moreover, Union Pacific refers the Court to its Safety Rule 76.2.1, which states, "Employees must not use defective equipment or tools until they are safe to use. Employees must report any defects to the proper authority." Filing 40 at 16 (¶ 6). Union Pacific contends that Hawley violated

this rule because he "did not report the defective condition to management for repairs" and "failed to use alternative methods to move the knuckle that were readily available like the forklift." Filing 40 at 16 (¶¶ 7–8). Union Pacific further argues that Hawley "knew that carmen should report any defective equipment they came across when working" and failed to do so, since Hawley "knew of defects" for "as long as [he could] remember" and Hawley "even said he operated this knuckle cart in its allegedly defective condition before this incident." Filing 40 at 17 (¶¶ 9–10). Union Pacific contrasts Hawley's failure to report the allegedly defective knuckle cart with "[t]he other witnesses who were deposed in this case" who "each testified that they would not use this knuckle cart if they found it in this defective condition, and that they would report it for maintenance." Filing 40 at 17 (¶ 11). Hawley denies Union Pacific's contention that he "did not report the defective condition to management for repairs," noting instead that his testimony only indicated his "lack of recollection" on the issue. Filing 53 at 6 (¶ 7).

### B.  Procedural Background

Hawley filed a Complaint with the Court on July 28, 2022. Filing 1. His Complaint contains only one cause of action: negligence under the Federal Employers' Liability Act, 45 U.S.C. § 56. Filing 1 at 3 (¶ 9). Union Pacific filed its Answer on August 23, 2022, denying liability for negligence and raising affirmative defenses, including Hawley's sole or contributory negligence. Filing 6. On June 15, 2023, Hawley filed a Motion for Partial Summary Judgment, seeking to establish Union Pacific's negligence as a matter of law, leaving only the measure of damages for a jury. Filing 23. On July 10, 2023, Union Pacific filed a Motion for Summary Judgment, seeking to establish Hawley's sole negligence as a matter of law and dismissal of Hawley's claims. On

September 1, 2023, Hawley filed a Motion to Exclude the Testimony of Dr. Jeff Broker, Union Pacific's expert, on the basis of untimely disclosure and lack of reliability and qualifications.

## II. ANALYSIS

### A. Applicable Standards

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

The Eighth Circuit Court of Appeals has explained,

> "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)] (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

*Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the "materiality" requirement slightly differently, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness*, 31 F.4th at 614 (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" *Avenoso v. Reliance*

*Standard Life Ins. Co*., 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins*., 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649 (8th Cir. 2022); *Pearson v. Logan Univ*., 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, "'[t]he movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042).

The burden on the resisting party is as follows:

The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." *Fed. R. Civ. P. 56(c)(1)*. "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N*., 480 F.3d 841, 844 (8th Cir. 2007) ("*3234 Washington*"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might

turn up at the trial." *Id*. at 845 (quotations omitted); *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845.

*Erickson*, 31 F.4th at 1048. Thus, "'[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)).

## B. Summary Judgment Is Not Appropriate on the FELA Claim

Both Union Pacific and Hawley seek summary judgment on Hawley's FELA claim. Hawley asks the Court to find that Union Pacific was negligent as a matter of law. Filing 23. Union Pacific asks the Court to find that Hawley was the sole cause of his injury as a matter of law. Filing 37. Although not specifically mentioned in Union Pacific's Motion for Summary Judgment, Union Pacific also appears to ask the Court to find that it is not liable for negligence as a matter of law. *See* Filing 38 at 1 ("Further, Union Pacific is not liable under [FELA] . . . when it does not have actual or constructive notice of broken equipment."). For reasons explained below, the Court declines to grant summary judgment in favor of either party.

FELA provides that a railroad "shall be liable in damages to any person suffering injury while he is employed by [the railroad]. . . resulting in whole or in part from the negligence of [the railroad] . . . or by reason of any defect or insufficiency, due to its negligence." 45 U.S.C. § 51. In FELA actions, "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." *Id*. § 53. Put differently, FELA has a comparative negligence scheme. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (stating that

10

FELA "rejected the doctrine of contributory negligence in favor of that of comparative negligence"). Congress also provided that the traditional defense to negligence of assumption of risk is not available to railroads under FELA. *See* 45 U.S.C. § 54 (providing that an "employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of" the railroad). The Supreme Court has "liberally construed FELA to further Congress' remedial goal" of "shift[ing] part of the 'human overhead' of doing business from employees to their employers." *Gottshall*, 512 U.S. at 543 (citations omitted). Even so, the Court has explained that FELA is not "a workers' compensation statute" and "does not make the employer the insurer of the safety of his employees while they are on duty." *Id.*

Moreover, "negligence for the statute's purposes . . . generally turns on principals of common law . . . subject to such qualifications as Congress has imported onto those terms." *Id.* The Eighth Circuit has described "the four familiar common law elements" of negligence: "a duty owed to the plaintiff, breach of that duty, proximate causation, and damages." *Budden v. United States*, 15 F.3d 1444, 1449 (8th Cir. 1994). However, the Supreme Court has explained that in FELA cases, the causation standard is lessened: "If negligence is proved, however, and is shown to have played any part, even the slightest, in producing the injury, then the carrier is answerable in damages even if the extent of the injury or the manner in which it occurred was not probable or foreseeable." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703–04 (2011) (cleaned up). This causation standard applies equally for negligence and contributory negligence under the statute. *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 166 (2007) ("We conclude that FELA does not abrogate the common-law approach, and that the same standard of causation applies to railroad negligence under [45 U.S.C. § 51] as to plaintiff contributory negligence under [45 U.S.C. § 53].").

11

Ultimately, the Court denies Hawley's Motion for Partial Summary Judgment and Union Pacific's Motion for Summary Judgment because there are three genuine issues of material fact. These are whether the knuckle cart was defective prior to the collision; if the knuckle cart was defective prior to the collision, whether any defects in the knuckle cart caused the collision; and whether the collision caused Hawley's injury. "[T]he evidence is sufficient" that either Hawley or Union Pacific could "persuade a reasonable jury" to resolve these issues in their favor. *Schlif*, 687 F.3d at 948. Resolving these factual disputes necessarily involves determining the credibility of the several witnesses and weighing the evidence, which is a task appropriate for a jury and precludes summary judgment. *See Avenoso*, 19 F.4th at 1024 ("[A] district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'").

### 1.  A Reasonable Juror Could Find that Union Pacific Was Not Negligent

The parties do not dispute that Union Pacific is a railroad engaged in interstate commerce nor that Hawley was Union Pacific's employee, so Union Pacific had a duty to not negligently injure Hawley under FELA. *See* 45 U.S.C. § 51; Filing 1 at 1 (¶ 3). Hawley did not move for summary judgment on the issue of damages, and Union Pacific offers no evidence to rebut Hawley's contention that he has a shoulder injury. *Budden*, 15 F.3d at 1449. Thus, because duty and damages are not at issue, the Court must only determine whether Hawley is entitled to judgment as a matter of law that Union Pacific breached its duty to Hawley and that this breach caused his injury.

Regarding Union Pacific's alleged breach, Hawley contends that "there is no dispute that the knuckle cart was defective." Filing 24 at 3. He explains that "based on its bent wheels and axles" the knuckle cart "was so plainly defective" that "UP management . . . were all able to identify the defect from a picture of the cart." Filing 24 at 4. Hawley also points out that "the UP managers were

uniform in their opinion that the defective knuckle cart was unsafe or should have been taken out of service." Filing 24 at 4. Hawley also argues that "there is no dispute that using the defective knuckle cart caused Hawley's injury." Filing 24 at 1. Hawley also argues that Union Pacific violated its own policies[2] regarding the knuckle cart and that this establishes Union Pacific's breach as a matter of law.

Union Pacific disputes Hawley's contention that the knuckle cart was defective prior to the collision and caused Hawley's injury. Filing 38 at 3 ("There is evidence in the record that the knuckle cart was not defective before Plaintiff pushed it into the secondary support."). Union Pacific does not contest that the knuckle cart was defective at the time it was photographed. As discussed above, besides Hawley, every witness deposed—all of whom worked at the facility where Hawley was injured—uniformly testified that they had never seen and knew nothing about a defective knuckle cart. Filing 40 at 15 (¶ 1). Union Pacific posits that "it is entirely possible that the cart bent when Plaintiff hit the secondary support." Filing 38 at 5. In response, Hawley argues that "[i]t is totally implausible for UP to try to explain away the state of this defective knuckle cart as resulting from a walking-speed collision with the secondary support" and that Union Pacific's theory "is pure speculation" Filing 51 at 2–3. Hawley contends that the knuckle cart's condition "is obviously not the kind of damage that could be caused by pushing a small cart loaded with a roughly 70-pound knuckle into a secondary support at walking speed." Filing 51 at 4.

---

[2] Hawley contends Union Pacific's policy is established by its General Code of Operating Rules (GCOR) and its customary practice, as follows:

UP's GCOR Rule 76.2.1 states: "Prior to use, tools and equipment must be inspected for conditions that might cause the tool or equipment to fail. Kincheloe, the general foreman, summarized this rule when he admitted that, "[i]f there's [a] piece missing off of [a piece of equipment] or if something's broke or bent, then that's [a] part of our inspection of tools equipment rule, to take it out of service."

Filing 24 at 8 (record citations omitted).

Regarding causation, Union Pacific contends that, even if the knuckle cart was defective at the time of the collision, these defects did not cause the collision and Hawley's alleged resulting injury. Filing 38 at 5–6 ("There is also evidence that the accident on August 19, 2019, did not occur in the way plaintiff claims that it happened."). Union Pacific refers the Court to its expert, Dr. Broker, who reported his opinion that:

> Mr. Hawley's claim that he could not see the end of the right axle on the subject knuckle cart, due to the distortion of the right wheel/axle, is not supported by our inspection. The right axle protrudes significantly from the right wheel and is visible and easily seen if needed to manage clearances. Further, despite the bent left axle and distorted right wheel, the cart tracked straight when pushed. It did not veer to the right or left when pushed. Mr. Hawley's testimony concerning how the cart's bent axle/wheel caused it to strike the stationary equipment is not supported…. The described knuckle cart incident was not consistent with causing Mr. Hawley to sustain a left shoulder injury. The physics of the cart's interaction with the secondary support unit, coupled with Mr. Hawley's connections with the cart, do not support violent loading of Mr. Hawley's left shoulder.

Filing 38 at 6. Hawley disputes Dr. Broker's opinion that the defective condition of the knuckle cart did not cause the collision. Filing 51 at 1 ("[T]he cart's defects caused it to swerve and strike other equipment, causing Hawley to suffer serious injuries.").

The Court finds that there are genuine issues of material fact regarding both breach and causation that preclude establishing Union Pacific's liability for negligence as a matter of law. First, regarding breach, the Supreme Court explained the duty of care in FELA cases:

> Reasonable foreseeability of harm . . . is indeed an essential ingredient of FELA negligence. The jury, therefore, must be asked, initially: Did the carrier fail to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances? In that regard, the jury may be told that the railroad's duties are measured by what is reasonably foreseeable under like circumstances. Thus, if a person has no reasonable ground to anticipate that a particular condition would or might result in a mishap and injury, then the party is not required to do anything to correct the condition.

*McBride*, 564 U.S. at 703 (cleaned up). Accordingly, if the knuckle cart was not defective at the time of the collision but was instead rendered defective by the collision, there would have been "no reasonable ground [for Union Pacific] to anticipate that a particular condition would or might result in a mishap and injury," i.e., the collision would not have been "reasonably foreseeable." *Id.* Under such circumstances, Union Pacific would not have breached its duty of care to Hawley and could not be liable for negligence. Conversely, if the knuckle cart was obviously defective at the time of the collision and had been "for years," a resulting injury could have been reasonably foreseeable, which may suffice to establish that Union Pacific breached its duty of care as a matter of law. *Id.*; *see also* Filing 25 at 4 (¶ 14). The key factual issue—whether the cart was defective at the time of the collision—is disputed by the parties. A jury could reasonably find that Hawley's testimony on this issue is less credible than the deposition testimony of the other five witnesses who all worked at Union Pacific and claimed they had never seen a defective knuckle cart prior to the collision. *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014) (stating that it is not appropriate for courts to "judge the credibility of the witnesses or weigh the evidence . . . unless there is a complete absence of probative facts to support the verdict" at the summary judgment stage) (citation omitted). Therefore, Hawley cannot establish as a matter of law that Union Pacific breached its duty of care,[3] making summary judgment on Union Pacific's negligence liability inappropriate.

Second, regarding causation, there are genuine issues of material fact relating to whether Union Pacific's alleged breach of its duty of care—allowing a defective knuckle cart to remain in

---

[3] Because the Court finds that a genuine issue of material fact exists as to whether the knuckle cart was defective at the time of the collision, the Court can dispose of Hawley's argument that Union Pacific is liable for negligence because it violated its own rules. Filing 24 at 7–9. If the knuckle cart was not defective at the time of the collision, Union Pacific did not violate its policy to "inspect[ ] for conditions that might cause the tool or equipment to fail" and if any are found "to take it out of service." Filing 24 at 8.

use on its premises—caused the collision and Hawley's resulting shoulder injury. The Supreme Court explained the lessened causation standard in FELA cases: "If negligence is proved [ ] and is shown to have played any part, even the slightest, in producing the injury, then the carrier is answerable in damages even if the extent of the injury or the manner in which it occurred was not probable or foreseeable." *McBride*, 564 U.S. at 703 (cleaned up). Accordingly, assuming the knuckle cart was defective at the time of the collision, if the knuckle cart's condition "played any part, even the slightest, in producing" the collision, or if the collision "played any part, even the slightest, in producing the injury" to Hawley's shoulder, then Union Pacific is liable. *Id.* However, the parties dispute whether the alleged defects in the knuckle cart caused it to "veer" into the secondary support; if Hawley simply pushed the knuckle cart directly into the secondary support without any veering, the alleged defects in the knuckle cart did not "play[ ] any part" in causing the collision. *Id.* In addition, the parties dispute whether the collision caused Hawley's shoulder injury; if the impact on Hawley's shoulder from the collision is unrelated to his shoulder injury, the collision did not "play[ ] any part" in causing Hawley's injury. *Id.* Ultimately, the jury will have to weigh the credibility of Hawley's version of events against the expert testimony of Dr. Broker to determine the cause of the collision and the cause of Hawley's shoulder injury. Because the Court does not "judge the credibility of the witnesses or weigh the evidence," summary judgment is inappropriate at this stage. *Sanders*, 773 F.3d at 190.

The Court denies Hawley's Motion for Partial Summary Judgment because there are genuine issues of material fact relating to whether Union Pacific breached its duty of care and if so, whether that breach caused Hawley's injury.

2. *A Reasonable Juror Could Find that Hawley Was Contributorily Negligent or the Sole Cause of His Injury*

Hawley asks the Court to "strike UP's purported contributory negligence and sole cause affirmative defenses as a matter of law." Filing 24 at 2. In support of its affirmative defenses, Union Pacific alleged the following:

> Plaintiff failed to take the safest course while navigating the knuckle cart in violation of GCOR 1.1.1: [Maintaining a Safe Course]. Plaintiff used a defective knuckle cart in violation of GCOR 1.1.4: [Condition of Equipment and Tools]. Plaintiff failed to correct or protect an unsafe condition in violation of Safety Rule 70.1: [Safety Responsibilities]. Plaintiff failed to make sure the pathway to be used was clear of obstructions, debris, or other conditions in violation of Safety Rule 70.6: [Lifting and Moving Material]. Prior to use, Plaintiff failed to inspect the knuckle cart for conditions that might cause it to fail in violation of Safety Rule 76.2.1: [Inspection of Tools or Equipment].
>
> . . .
>
> Plaintiff was not required to use the particular knuckle cart allegedly involved in the incident. Additional carts were available for his use in the subject location. Plaintiff could have used a different cart, even if there were no carts immediately available to him and he would have had to wait for another one to become available. Plaintiff had a duty and responsibility to himself and to his co-workers to inspect the cart before its use and, upon observation of a defect, tag it and remove it from service. There is no evidence of prior complaints about the subject knuckle cart, or any other knuckle cart at the North Platte yard, made by Plaintiff or any other employee. Plaintiff failed to follow proper procedures in reporting that the subject knuckle cart needed repair(s) so the repair(s) could be made.

Filing 26-9 at 12–13 (brackets in original). In short, Union Pacific argues that Hawley caused his own injury because he (1) failed to take the safest course with the knuckle cart; (2) knowingly used a defective knuckle cart when other carts were available; and (3) failed to report the knuckle cart, even though he knew of the knuckle cart's defects. Hawley contends that "[e]ach purported basis for UP's contributory negligence or sole cause defense in its responses to interrogatories impermissibly relies on a nonobjective safety rule, a thinly veiled assumption-of-the-risk argument,

17

or speculation about the existence of favorable facts that have not been developed in the actual record." Filing 24 at 13–14. The Court will consider whether a reasonable juror could determine that any of Union Pacific's asserted bases establishes that Hawley was the sole cause of his injury.

The Eighth Circuit explained, "If the plaintiff's negligence was the sole cause [of his injury], then" negligence by the railroad "could not have contributed in whole or in part to the injury." *Beimert v. Burlington N., Inc.*, 726 F.2d 412, 414 (8th Cir. 1984). In other words, the sole-cause defense arises when harm is fully attributable to a plaintiff's contributory negligence. In addition, the traditional "assumption of the risk" doctrine is unavailable under FELA. *See* 45 U.S.C. § 54. The Eighth Circuit addressed the difference between assumption of the risk and contributory negligence in the FELA context:

> Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. By this reasoning, the employer's argument here must fail, for it is in essence an assumption of risk defense, not one based upon contributory negligence. The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.

*Birchem v. Burlington N. R. Co.*, 812 F.2d 1047, 1049 (8th Cir. 1987) (quoting *Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1316 (9th Cir. 1986)).

The Court begins with Union Pacific's contention that Hawley was the sole cause of his injuries because he failed to take a safe course with the knuckle cart. The jury could reasonably

"weigh the evidence" and disagree with Hawley to find that he negligently took the knuckle cart in an unsafe course, which would be contributory negligence. *Avenoso*, 19 F.4th at 1024. Moreover, as discussed above, a jury could reasonably find that the knuckle cart was not defective before the collision, in which case Union Pacific would not be liable for negligence. [4] Thus, if the jury determines that the knuckle cart was not defective at the time of the collision and that Hawley's negligence contributed to his injury, Union Pacific will have established its sole-cause defense. Ultimately, "the evidence is sufficient to persuade a reasonable jury" to accept either Union Pacific's or Hawley's version of events on this issue. *Schilf*, 687 F.3d at 948. The determination depends on weighing "the credibility of the witnesses." Hawley contends that he did not take the knuckle cart down an unsafe path, but also alleged in his Complaint that he had "to go around other pieces of equipment that were being used for repairs" while pushing the knuckle cart, which could be evidence that Hawley negligently failed to take a safe course. Filing 1 at 2 (¶ 8). *Sanders*, 773 F.3d at 190. Thus, summary judgment is inappropriate because a jury must decide whether Hawley's negligence was the sole cause or contributed to his injury by his failure to take a safe path. *See Avenoso*, 19 F.4th at 1024 ("[A] district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'").

Turning to Union Pacific's second basis for its sole-cause defense, the argument that Hawley used a knuckle cart knowing it was defective is plainly an assumption-of-the-risk defense that is not cognizable under FELA. *See* 45 U.S.C. § 54; *Birchem*, 812 F.2d at 1049 ("At common law an

---

[4] As discussed below, Union Pacific does not need to establish that Hawley's negligence was the sole cause of his injury to avoid liability; Union Pacific simply needs to persuade the jury that Union Pacific is not liable for negligently causing Hawley's injury. In other words, Union Pacific's liability does not necessarily depend on establishing that Hawley was negligent.

employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk."). Thus, Union Pacific's second basis for Hawley's negligence is legally insufficient to establish its sole-cause or contributory-negligence defense.

Finally, the Court turns to Union Pacific's third basis for its sole-cause and contributory-negligence defense—that Hawley knowingly failed to report any defects in the knuckle cart. The Eighth Circuit has noted that evidence that an employee failed to report a known defect could serve as evidence of his own contributory negligence as "a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist." *Birchem*, 812 F.2d at 1049; *see also Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 979 (8th Cir. 1995) (the district court properly allowed a jury to consider contributory negligence in a FELA case where the employee "had a duty in such circumstances to tell his supervisors the equipment was ineffective"). A jury could reasonably find that, had Hawley reported the defective knuckle cart, Union Pacific would have repaired the knuckle cart or removed it from the facility, and Hawley's failure to report the knuckle cart's defects contributed to his injury. Thus, a jury could weigh the evidence and find that Hawley's failure to report the defective condition of the knuckle cart contributed to his negligence, making summary judgment inappropriate on this ground. *See Avenoso*, 19 F.4th at 1024 ("[A] district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'"). However, as discussed above, if Union Pacific allowed an obviously defective knuckle cart to remain available for its employees to use, Union Pacific would also be at least contributorily negligent because the FELA statute provides that railroads are liable for "any defect or insufficiency, due to its negligence, in its . . .

equipment." 45 U.S.C. § 51. Therefore, Union Pacific could "persuade a reasonable jury" that Hawley's failure to report the defective knuckle cart contributed to his injury but not that his failure to report was the sole cause of his injury. *Schif*, 687 F.3d at 948.

Hawley is entitled to judgment as a matter of law on the parts of Union Pacific's contributory negligence or its sole-cause defenses based on allegations that Hawley used the knuckle cart knowing it was defective and unsafe. This is an assumption-of-the-risk argument that is not allowed under the FELA statute. 45 U.S.C. § 54. Hawley is further entitled to judgment as a matter of law on the part of Union Pacific's sole-cause defense based on Hawley's failure to report the defective knuckle because Union Pacific necessarily contributed to Hawley's injury if the knuckle cart was defective prior to the collision by failing to provide safe equipment. However, Hawley is not entitled to summary judgment on the part of Union Pacific's contributory negligence defense based on Hawley's failure to report the defective knuckle cart. Finally, Hawley is not entitled to summary judgment on the parts of Union Pacific's contributory negligence and sole-cause defenses based on Hawley's alleged failure to take a safe course with the knuckle cart. Therefore, Hawley's Motion for Partial Summary Judgment as to Union Pacific's affirmative defenses of sole cause and contributory negligence is granted in part and denied in part.

3. *A Reasonable Juror Could Find that Union Pacific Negligently Caused Hawley's Injury and That Hawley Was Not the Sole Cause*

Union Pacific filed a Motion for Summary Judgment on its affirmative defense of sole cause, and although not contained in the Motion, Union Pacific also appears to seek summary judgment to establish that Union Pacific is not liable for negligence as a matter of law. Filing 37; *see also* Filing 38 at 1 ("Further, Union Pacific is not liable under [FELA] . . . when it does not have actual or constructive notice of broken equipment."). The Court denies summary judgment on both grounds.

21

The Court begins with Union Pacific's contention that Union Pacific is not liable for negligence as a matter of law. The heart of Union Pacific's argument is insufficiency of the evidence. Union Pacific contends that there is insufficient evidence from which a reasonable jury could conclude that the knuckle cart was defective at the time of the collision. Filing 38 at 3–4 ("Plaintiff's only alleged evidence that the knuckle cart was defective at the time of the incident is a post-accident photo of the knuckle cart. Plaintiff solicited deposition testimony from Union Pacific's witnesses looking at this photo to state that the knuckle cart appears to be defective in the photo. The post-incident photo and corresponding deposition testimony does not establish that the knuckle cart was defective before the incident."). Union Pacific argues that even if the cart was defective at the time of the collision, there is no evidence that any defect caused the collision or that the collision caused Hawley's injury. Filing 38 at 5–6 ("The analysis, the data generated during Dr. Broker's testing, and the conclusions and opinions Dr. Broker provided do not support Plaintiff's version of how the knuckle cart behaved on the date of the alleged incident. . . . [In addition,] [t]he described knuckle cart incident was not consistent with causing Mr. Hawley to sustain a left shoulder injury."). Alternatively, Union Pacific contends that if the cart was defective at the time of the collision there is no evidence that Union Pacific had notice of any defects. Filing 38 at 7 ("Plaintiff is the only witness who testified that he knew the knuckle cart was defective prior to the date of the alleged incident. All other witnesses who testified establish that Union Pacific was not aware of a defective knuckle cart at this railyard.").

Hawley claims that "[t]he uncontroverted evidence establishes that the knuckle cart was obviously defective prior to and at the time Hawley used it and was injured." Filing 51 at 2. Hawley further argues that there is "uncontroverted evidence that UP was responsible, through negligence,

for the presence of the unsafe knuckle cart, and that the cart's unsafe condition had continued for a sufficient length of time to justify the inference that the failure to know about it and remove it was due to want of proper care." Filing 51 at 6.

Hawley argues there is enough evidence from which a reasonable jury could determine that Union Pacific was negligent, and Union Pacific argues the evidence is insufficient. The Court agrees with Hawley that a jury could conclude from the evidence that Union Pacific is liable for negligence, making judgment as a matter of law inappropriate. *Schlif*, 687 F.3d at 948.

As discussed above, only the negligence elements of breach and causation are at issue here. The Eighth Circuit has recognized that an owner or occupier of premises breaches his duty of care if it "knew of the condition, or by exercise of reasonable care would have discovered the condition." *Ackerman v. U-Park, Inc.*, 951 F.3d 929, 934 (8th Cir. 2020) (citation omitted). Hawley "has the burden of providing sufficient evidence to create a material question of fact regarding whether [Union Pacific] had either actual or constructive notice of the condition," namely, the defective state of the knuckle cart at the time of the collision, "that caused" Hawley's injury. *Id.*; *see also McBride*, 564 U.S. at 703 (stating that "the railroad's duties are measured by what is reasonably foreseeable under like circumstances"). Thus, to recover on his FELA claim, Hawley must prove that the knuckle cart was obviously defective prior to the collision such that it gave Union Pacific constructive notice or made Hawley's injury reasonably foreseeable; that the defective condition of the knuckle cart caused the collision; and that the collision caused Hawley's injury.

Regarding breach, the Court holds that there is sufficient evidence from which a jury could determine the knuckle cart was defective prior to the collision, *i.e.*, that Union Pacific breached its duty of care to Hawley by allowing obviously defective equipment to remain available for his use.

*See Schilf*, 687 F.3d at 948. Although Hawley is the only witness that claims to have known the knuckle cart was defective prior to the collision, a jury could believe his testimony and discount the testimony of others. In addition, it is undisputed that Union Pacific does not conduct regular inspections of its knuckle carts, and a jury could reasonably find that Union Pacific lacked notice of the defective cart for this reason. Filing 25 at 3 (¶ 11). Moreover, a jury could reasonably believe that the knuckle cart would not have gotten severely damaged by a walking-speed collision, such that one wheel is bent and both wheels are angled inwards. Filing 25 at 4 (¶ 15) (photograph of the cart after the collision). Thus, a jury could ultimately find that Union Pacific breached its duty under FELA for the "defect or insufficiency, due to its negligence, in its . . . equipment." 45 U.S.C. § 51. Therefore, because resolving the issue requires "weigh[ing] the evidence" and "mak[ing] credibility determinations," Union Pacific is not entitled to judgment as a matter of law on the issue of breach. *Avenoso*, 19 F.4th at 1024.

Regarding causation, the Court also holds that there is sufficient evidence from which a reasonably jury could determine that the defective nature of the knuckle cart caused the collision and that the collision caused Hawley's injury. Union Pacific only offers expert testimony to rebut Hawley's claim that "the cart veered due to the bent wheel rims striking another piece of equipment" and caused Hawley to "immediately fe[el] severe pain in his left shoulder." Filing 1 at 2 (¶ 8). A jury could reasonably discredit Dr. Broker's testimony and instead determine that the knuckle cart's defects caused the collision and that the collision caused Hawley's injuries. *3234 Washington*, 480 F.3d at 845 (holding that "summary judgment is improper where specific facts 'even partially' undermine the witness's credibility in a material way"). Thus, because establishing the cause of Hawley's injury depends on witness credibility and weighing the evidence, judgment as a matter of

law is inappropriate. *Sanders*, 773 F.3d at 190 (holding that courts should not "judge the credibility of the witnesses or weigh the evidence . . . unless there is a complete absence of probative facts to support the verdict"). Therefore, because breach and causation present jury questions, insofar as Union Pacific's Motion for Summary Judgment was to establish that it was not negligent as a matter of law, the Motion is denied.

The Court turns to Union Pacific's argument that it has established its sole-cause defense as a matter of law. Just as Hawley bears the burden of establishing Union Pacific's negligence, Union Pacific bears the burden of establishing that Hawley's negligence was the "sole cause" of his injury. *Sorrell*, 549 U.S. at 166 (concluding that "the same standard of causation applies to railroad negligence . . . to plaintiff contributory negligence"). As discussed above, "the evidence is sufficient to persuade a reasonable jury" that Union Pacific allowed obviously defective equipment to remain available for employees to use in its facility, which could constitute negligence. *Schilf*, 687 F.3d at 948. This possible jury finding is sufficient to deny Union Pacific's Motion for Summary Judgment on its sole-cause affirmative defense.

In sum, the Court finds that there are several genuine issues of material fact that preclude the Court from resolving this case as a matter of law. *See Torgerson*, 643 F.3d at 1042. Accordingly, Hawley's Motion for Partial Summary Judgment, Filing 23, and Union Pacific's Motion for Summary Judgment, Filing 37, are denied.

### C.  Union Pacific's Expert Report Was Not Untimely Disclosed and Is Reliable

Hawley filed a Motion to Exclude Testimony of Jeff Broker, one of Union Pacific's expert witnesses. Filing 56. Dr. Broker submitted a "Biomechanics Report" in which he detailed his examination of and biomechanical tests on the knuckle cart that Hawley was using. Filing 39-10 at

25

11–14. Dr. Broker concluded, contrary to Hawley's claims, that "[i]t is not difficult to sight to the axle while moving the cart about, despite the angulation of the right wheel," meaning that in his opinion any defect in the knuckle cart did not cause the collision. Filing 39-10 at 17. Dr. Broker also concluded that "[t]he biomechanics of the knuckle cart incident described above were not consistent with loading of Mr. Hawley's left shoulder assignable to" Hawley's shoulder injury, meaning that in his opinion the collision did not cause Hawley's injury. Filing 39-10 at 17. Hawley contends that Dr. Broker's report should be excluded because it is untimely and unreliable.

### 1. Dr. Broker's Expert Testimony Is Properly Characterized as "Rebuttal" Making His Disclosure Timely

There is no dispute that Union Pacific's disclosure of Dr. Broker's report must be classified as rebuttal evidence to be timely since it was disclosed after the initial expert witness disclosure deadline but before the rebuttal expert disclosure deadline. Filing 39-10. However, Hawley argues that Dr. "Broker's report is not a rebuttal report" because the report "attempted to establish evidence in support of UP's case-in-chief." Filing 56 at 2, 5. Union Pacific responds that Dr. "Broker is a rebuttal expert that was timely disclosed in this case" and asks the Court to "reject Plaintiff's assertions to the contrary." Filing 58 at 2. Union Pacific also notes that it disclosed two expert witnesses before the initial deadline to support two of its affirmative defenses, in contrast to Dr. Broker's report that allegedly "rebut[s] [Hawley's expert witness] Engle's opinions". Filing 58 at 2. The Court agrees with Union Pacific that Dr. Broker's report was timely disclosed as rebuttal evidence.

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) provides, "A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made[,] . . . if the evidence is intended solely to contradict or rebut

evidence on the same subject matter identified by another party[,] . . . within 30 days after the other party's disclosure." The Eighth Circuit explained that "[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party. As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (cleaned up). The "case-in-chief" is "[t]he part of a trial in which a party presents evidence to support the claim or defense." *Black's Law Dictionary*, 267 (11th ed.). Conversely, the definition of "rebuttal" is "[t]he time given to a party to present contradictory evidence or arguments." *Id.* at 1521; *see also Marmo*, 457 F.3d at 759 (using Black's Law Dictionary to define "rebut"). Thus, the Court must determine whether Broker's report "is intended solely to contradict or rebut evidence on the same subject matter identified by" Hawley's expert Engle's report or to "establish [Union Pacific's] case-in-chief." *Marmo*, 457 F.3d at 759.

The Court begins by noting the posture of this case: cross-motions for summary judgment, with Hawley seeking to establish that Union Pacific is liable for negligence as a matter of law and Union Pacific seeking to establish a dispositive affirmative defense (sole cause) as a matter of law. *See* Filing 23; Filing 37. As discussed above, Hawley has the burden of proof to establish that Union Pacific is liable for negligence, but Union Pacific has the burden of proof to establish its affirmative defense that Hawley's negligence was the sole cause of his injury. Thus, Dr. Broker's report is properly characterized as rebuttal evidence if it contradicts Engle's opinions regarding Union Pacific's negligence, but it is not rebuttal evidence if it goes beyond Engle's opinions or bears on Hawley's negligence, which Union Pacific would have to show in its case-in-chief.

27

The Court finds that Dr. Broker's report rebuts Engle's opinions regarding Union Pacific's

negligence. Engle's report concludes the following:

> UPRR did not look out for the safety of Mr. Hawley and did not provide Mr. Hawley a reasonably safe place to work. UPRR did not exercise reasonable care to prevent Mr. Hawley from being injured and UPRR created unnecessary risk of injury to Mr. Hawley. UPRR could have avoided and prevented this incident but failed to take reasonable steps to avoid this incident. **This incident and Mr. Hawley's injuries were foreseeable and were caused by UPRR's failure to comply with industry standards of care and their own safety and operating rules.** UPRR managers failed to take reasonable and ordinary precautions to avoid this incident. Union Pacific did not meet, nor comply with industry standards of care to protect unsafe conditions that affect the safety of employees and the safe operation of the railroad. Mr. Hawley had the right to rely upon Union Pacific managers to properly supervise, instruct, and enforce safe work practices. UPRR was responsible for training, instructing, and supervising Mr. Hawley in the manner and method in which they expected him to complete his work. My review of the evidence and testimony indicates Mr. Hawley did perform his work in the manner and method he was trained and instructed. Mr. Hawley also had the right to expect and rely on the UPRR to follow industry safety standards and their own rules that would prevent the continued use of defective, modified, inadequate, and unsafe tooling carts that UPRR provided its employees.

Filing 54-1 at 30 (emphasis added). Engle concluded that both the collision and Hawley's injury

"were caused by UPRR's failure to comply with industry standards of care and their own safety and

operating rules."

Dr. Broker's report specifically rebuts Engle's conclusion that the collision and Hawley's

injury were caused by anything on Union Pacific's part. Dr. Broker's report concludes the following

regarding the cause of Hawley's injury:

> Because the weight of the cart and knuckle are behind and above the cart's axles, closer to the operator than the wheels, this pitching action actually decreases the vertical forces on the operator's hands. The operator experiences a lightening of the cart's weight in response to the axle contact. There is no sudden increase in force on the operator's hands. Despite Mr. Hawley's claims that the cart motion "jerked" his left arm and shoulder, forces tending to "jerk" the handles from his hands did not arise. Instead, the cart momentarily felt lighter.

. . .

**The described knuckle cart incident was not consistent with causing Mr. Hawley to sustain a left shoulder injury.** The physics of the cart's interaction with the secondary support unit, coupled with Mr. Hawley's connections with the cart, do not support violent loading of Mr. Hawley's left shoulder. From a biomechanics perspective, Mr. Hawley's left shoulder condition is more than likely just that, a condition, documented as degenerative in his medical records, easily and logically associated with normal aging processes, activities, and occupational exposures. Much greater forces were applied to Mr. Hawley's left shoulder when he transferred the 80 lb knuckle onto the cart than when the knuckle cart contacted the secondary support.

. . .

His specific left shoulder joint degenerative conditions, remarkably similar to right shoulder degenerative conditions that developed years before the subject incident – without a reported traumatic event, require no single traumatic event. **Mr. Hawley's long history of manual labor provides a perfect, biomechanically sound explanation for his left shoulder condition.**

Filing 39-10 at 1–2 (emphasis added). Regarding the cause of the collision, Dr. Broker concludes the following:

Mr. Hawley's claim that he could not see the end of the right axle on the subject knuckle cart, due to the distortion of the right wheel/axle, is not supported by our inspection. The right axle protrudes significantly from the right wheel and is visible and easily seen if needed to manage clearances. Further, despite the bent left axle and distorted right wheel, the cart tracked straight when pushed. It did not veer to the right or left when pushed. **Mr. Hawley's testimony concerning how the cart's bent axle/wheel caused it to strike the stationary equipment is not supported.**

Filing 39-10 at 2 (emphasis added). Therefore, Hawley's expert Engle's report put causation of the collision and Hawley's injury at issue, and Dr. Broker's report rebuts his conclusions.

In addition, Dr. Broker's report does not concern Union Pacific's sole-cause defense, on which Union Pacific must prove in its case-in-chief. Dr. Broker's report does not state that Hawley was or must have been negligent to cause the collision, which is necessary to establish that Hawley's negligence was the sole cause of his injuries. *See generally* Filing 39-10. Rather, Dr. Broker's report

29

only states that any defect in the knuckle cart, if it existed at the time of the collision, did not cause the collision, and the collision did not cause Hawley's injury. *See* Filing 39-10 at 1–2. Thus, because Dr. Broker's report does not go beyond Engle's opinions or bear on Hawley's negligence, the report is properly characterized as rebuttal evidence and is timely.[5]

### 2. Dr. Broker Is Qualified to Give Expert Testimony and His Methodology Is Reliable

Hawley argues that even if Dr. Broker's report is timely, it should nevertheless be excluded on the merits. Filing 56 at 6. Specifically, Hawley contends that Dr. Broker is unqualified to testify to the matters in his report and that Dr. Broker's opinions are unreliable. Filing 56 at 7–11. Hawley objects to Dr. Broker's "testing" of the knuckle cart involved in the collision as unscientific and to the "specific causal mechanism of injury" as a medical diagnosis which Dr. Broker, a biomechanical expert and not a medical doctor, is unqualified to give. Filing 56 at 7, 10. Union Pacific responds that "[i]t is proper for Broker to test the knuckle cart and report on the results" because the test was performed "in a manner substantially similar to Plaintiff's description of the incident." Filing 58 at 9–11.

Under Federal Rule of Evidence 702, expert opinion testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue," it is "based upon sufficient facts or data," and it is "the product of reliable principles and methods" which have been reliably applied "to the facts of the case." Fed. R. Evid. 702. The court must be mindful that expert opinions "can be both powerful and quite misleading." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

---

[5] To the extent that Union Pacific seeks to use Dr. Broker's report as evidence in its case-in-chief that Hawley was negligent or that his negligence caused his injury, the Court holds that it may not because that would not be rebuttal evidence.

595 (1993). In considering admissibility, the district court's job as gatekeeper is to "ensure that all scientific testimony is both reliable and relevant." Marmo, 457 F.3d at 757 (citing Daubert, 509 U.S. at 580). The inquiry "is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." Id. at 758. However, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." In re Wholesome Grocery Prods. Antitrust Litig., 946 F.3d 995, 1001 (8th Cir. 2019) (citing Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000)).

"A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." Craftsmen Limousine, Inc. v. Ford Motor Co., 363 F.3d 761, 776 (8th Cir. 2004). To meet the reliability requirement, the proponent of an expert opinion must show "that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." Marmo, 457 F.3d at 757-58; see also Daubert, 509 U.S. at 592-93 (stating that the court must assess "whether the reasoning or methodology underlying [an expert opinion] is scientifically valid"). "[C]onclusions and methodology are not entirely distinct from one another." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." Marmo, 457 F.3d at 758.

To satisfy the relevance requirement, the proponent of an expert opinion must demonstrate "that the reasoning or methodology in question is applied properly to the facts in issue." Id. A court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of

31

the expert." *Joiner*, 522 U.S. at 146. In exercising its gatekeeping role under *Daubert*, the court must focus "specifically on the methodology." *Synergistics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).

In addition, "[a] court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility." *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir. 1987). "[E]xperimental evidence falls on a spectrum and the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles. The closer the experiment gets to simulating the accident, the more similar the conditions of the experiment must be to the accident conditions." *McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1402 (8th Cir.1994).

The Court holds that Dr. Broker's report is admissible because it "is both reliable and relevant." *Marmo*, 457 F.3d at 757 (citing *Daubert*, 509 U.S. at 580). Dr. Broker's report is relevant because, as discussed above, it bears on whether any defects in the knuckle cart caused the collision and whether the collision caused Hawley's injury, issues on which Hawley must persuade the jury to succeed on his FELA claim. Dr. Broker's report is reliable because the testing that formed the basis of the report was "conducted under conditions substantially similar to the actual conditions." *Champeau*, 814 F.2d at 1278. The Court finds for several reasons that Dr. Broker took care to replicate the conditions of the collision as described by Hawley. Dr. Broker inspected the same knuckle cart that Hawley was pushing when the collision occurred and compared it to a non-defective knuckle cart. Filing 39-10 at 9 ("The heavy equipment transport cart allegedly involved in

32

Mr. Hawley's incident (hereafter referred to as the knuckle cart) and an exemplar knuckle cart were inspected at the Union Pacific claims office and yard/shop."). Dr. Broker replicated the conditions of the collision by a knuckle cart into a secondary support at walking speed, just as Hawley described. Filing 39-10 at 12 ("To evaluate Mr. Hawley's claims further, the loaded exemplar local cart was wheeled at moderate speed such that it's [sic] right axle struck one of the wheels of a secondary support unit."). Dr. Broker loaded the knuckle cart with the same type of knuckle that Hawley was transporting when the collision occurred. Filing 39-10 at 11. Dr. Broker also conducted the testing with a man of the same height as Hawley to determine the angles and forces Hawley would have needed to apply to push the loaded knuckle cart. Filing 39-10 at 11 ("Finally, a 5 foot 11 inch tall exemplar operator (essentially the same height as Mr. Hawley) operated the loaded cart in a 'comfortable' manner."). Thus, "the conditions of the experiment" conducted by Dr. Broker were very "similar . . . to the accident conditions" and his experiment is therefore reliable. *McKnight ex rel. Ludwig*, 36 F.3d at 1402.

In addition, Dr. Broker's report is reliable because he is "qualified to render the opinion and . . . the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757–58. Dr. Broker has held a Ph.D. in Biomechanics and Motor Control from UCLA's Department of Kinesiology for over 30 years and has worked as an Associate Professor of Biomechanics at the University of Colorado at Colorado Springs for over 20 years. Filing 39-10 at 23–24. He has published dozens of scholarly articles and other publications on the topic of biomechanics. Filing 39-10 at 25–35. Dr. Broker's specializations include "Industrial Accidents" and "Accident Causation." Filing 39-10 at 23. Thus, the Court finds that Dr. Broker is qualified to render opinions

on industrial accidents and accident causation, so long as those opinions rely on his expertise in biomechanics.

The Court likewise concludes the opinions in Dr. Broker's report can be made by him pursuant to his expertise in biomechanics. Dr. Broker's conclusions in his report are based on inspections and tests performed on the knuckle cart that measured the angles and amount of force required for a man of Hawley's height to move a knuckle. Filing 10-39 at 14 ("Exemplar operator (5 feet 11 inches) holding loaded subject knuckle cart in a comfortable condition. In this position, the loaded cart was tipped rearward approximately 35 degrees, and it took 28 to 30 lbs of vertical force at the handles to maintain the position."). Dr. Broker performed these tests on both the knuckle cart that allegedly injured Hawley and a non-defective knuckle cart. *See* Filing 10-39 at 14 ("The balance points of the subject cart, measured with and without an 80 lb knuckle on the carrying platform, were essentially the same as described for the exemplar cart outlined above."). In addition, to test Hawley's claim that the knuckle cart tends to "veer" to one side, Dr. Broker's report states:

> [T]he loaded subject knuckle cart was wheeled through the parking lot multiple times, with particular attention directed to its tracking. In other words, Mr. Hawley's claim that this cart veered or steered significantly to one side was explored. During our examination, the cart, despite its angled left axle and bent right wheel, steered remarkably straight. The cart was stable and did not veer or steer markedly to one side.

Filing 39-10 at 14 (emphasis omitted). The Court finds that all of these tests that underlay Dr. Broker's conclusions relied on his expertise in biomechanics, since the tests measured the forces involved in the collision and whether that collision generated sufficient force to cause Hawley's injury. *See Marmo*, 457 F.3d at 757-58 (stating that expert evidence is reliable if "the expert is qualified to render the opinion and [ ] the methodology underlying his conclusions is scientifically valid").

However, Dr. Broker also offered an alternative explanation for Hawley's injury, namely, that his condition is degenerative due to his long history of manual labor. Filing 39-10 at 18. The Court agrees with Hawley that Dr. Broker "is not a medical doctor and has no special qualifications to offer medical opinions about the nature or mechanism of Hawley's shoulder injury" to the extent that Dr. Broker opined on matters that he did not observe through his testing, such as whether Hawley's history of manual labor contributed to his shoulder injury. Filing 56 at 7. In other words, it is inappropriate for Dr. Broker to speculate about matters outside of his testing, especially since Dr. Broker is not a medical doctor and never personally examined Hawley. Dr. Broker himself appears to acknowledge that he is not qualified to determine what else besides the collision could have caused Hawley's injury. *See* Filing 39-10 at 8 ("Echelon Biomechanics does not make diagnoses or offer opinions on any findings within or about an individual's medical records; we leave this to medical doctors or related experts."). Dr. Broker is qualified to give the opinions contained in his report, except for his purported alternate explanation for Hawley's injury as a degenerative condition. Subject to that exception, Dr. Broker's expert conclusions are relevant and reliable, meaning it is admissible under Federal Rule of Evidence 702. Therefore, Hawley's Motion to Exclude Testimony of Jeff Broker is granted in part and denied in part.

### III. CONCLUSION

For these reasons, the Court excludes Hawley's Motion for Partial Summary Judgment, Filing 23, and Union Pacific's Motion for Summary Judgment, Filing 37. There are genuine issues of material fact that must be resolved by a jury and therefore preclude judgment as a matter of law. In addition, Hawley's Motion to Exclude Testimony of Jeff Broker, Filing 56, is denied because Dr. Broker's report is both timely and reliable. Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment, Filing 23, is granted in part and denied in part as set out above;

2. Defendant's Motion for Summary Judgment, Filing 37, is denied; and

3. Plaintiff's Motion to Exclude Testimony of Jeff Broker, Filing 56, is granted in part and denied in part as set out above.

Dated this 6th day of October, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge